# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Wilmer Martin Flores,<br><br>Defendant. | No. 17-1471-TUC-JAS(LAB)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. The defendant, Wilmer Martin Flores, argues that his statements made at a disciplinary hearing while he was an inmate at the U.S. Penitentiary (USP) in Tucson must be suppressed and precluded from trial because they are irrelevant, were taken in violation of *Miranda* and were involuntary, in violation of his Fifth Amendment rights. (Doc. 42).

An evidentiary hearing was held on 5/1/19. Tammy Phillips-Sluder testified. Government's Exhibit 1 was admitted by stipulation of the parties.

**Charge**:

The defendant is charged by indictment with Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a) and (b).

**Motion to Suppress**:

The defendant argues that his Fifth Amendment rights were violated when he attended a disciplinary hearing at the USP in Tucson, AZ and was asked if he wanted to

make a statement. He was not advised of his *Miranda* warnings and the defendant claims the atmosphere was coercive because he was handcuffed behind his back and could only leave the office where the hearing took place if he was handcuffed and escorted by correction officers. He also posits that the statement is irrelevant because the report memorializing it shows the date of incident as 6/20/14, while documenting that Mr. Flores made the statement at issue on 8/2/16, over 2 years later. He moves the Court to suppress the statement.

The Court concludes that the report is relevant, based on uncontroverted testimony that the gap in dates was due to a typographical error. The date of the incident and of the incident report are 6/20/16. The statement at issue was made 1 ½ months later. At the time Mr. Flores made the statement he was not in custody nor was he interrogated for purposes of *Miranda*. Based on the totality of the circumstances, Mr. Flores made the statement voluntarily and of his own free will. The statement is admissible at trial.

**EVIDENCE**:

*Exhibit 1* is a Discipline Hearing Officer (DHO) Report documenting an incident that occurred on 6/20/16, involving Inmate Wilmer Flores. The charges are summarized as "Assaulting any person without serious injury; Refusing to obey an order of any staff member." The report documents that written notice of the charge was given to the inmate by Lieutenant J. Ayala on 7/8/16 and a disciplinary hearing was held on 8/2/16. Counselor D. Diaz advised Mr. Flores of his rights on 7/11/16 and provided him with a written copy, which he signed. The rights include an admonition that the inmate's "…silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;".

Section III of the report summarizes Mr. Flores's statements, indicating that he declined to make a statement to the investigating Lieutenant, stated to the Unit Disciplinary Committee (UDC) that he wanted a staff representative, and admitted the charges to the DHO. Sanctions imposed included loss of 27 days good conduct time (GCT), disciplinary segregation for 30 days, 1 year loss of commissary, 1 year loss of email privileges and 1

year loss of visits.

According to the incident report, Mr. Flores was an inmate at the USP and was housed in the Special Housing Unit (SHU) at the time of the disciplinary infraction. The DHO found that he committed the infraction, based in part on his admission. The DHO also considered the statement of the reporting officer, photographs, medical assessments corroborating the incident report and video showing the assault. The incident report was referred to the FBI on 6/27/16 for prosecution. The FBI accepted the case to present to the USAO for criminal prosecution.

***Tammy Sue Sluder*** testified that she is a supervisory management analyst for the Office of Internal Affairs and has worked for the Bureau of Prisons (BOP) for about 21 ½ years. (RT 6:19-20, 23) On 6/20/16, the date of the incident in this case, she was working at the Federal Correctional Complex (FCC) in Tucson, Arizona, as the disciplinary hearing office for the entire complex. (RT 7:1-2, 10-11). She identified Mr. Flores as the person who was present at the disciplinary hearing she conducted on 8/2/16. (RT 21-22:24-25, 1-8)

On 6/20/16, 7/8/16, and at the start of the 8/2/16 hearing, Mr. Flores was given a copy of the incident report and was informed of his rights. (RT 10:4-5, 16-18) He declined to make a statement to the investigating lieutenant (RT 10:19-21) after the lieutenant advised Mr. Flores of his right to remain silent and that his silence could be used to draw an adverse inference against him. (RT 11:1-5) He was also informed that his silence could not be the sole reason for finding him guilty of the violation. (RT 11:6-8)

The next step in the process is to refer the case to the UDC. (RT 11:9-11) The UDC informs the inmate of all his rights, including the right to make a statement, to remain silent, that the silence could be used to draw adverse inferences, that silence cannot be the sole basis of guilt, and of the right to be present or not at the disciplinary hearing. (RT 11-12:25, 1-24) If the inmate chooses to attend the hearing, he can terminate the hearing any time and may leave with a guard escort. (RT 13:5-8) All inmates in the SHU must be escorted any time they are outside their cell. (RT32:4-6) At the UDC, Mr. Flores requested and

1  received a staff representative. (RT 13:20-24)   He made no other statements. (RT 14:1-2)

2  Due to the severity of Mr. Flores' incident, protocol required his case go to the next level of review, the DHO. (RT 14:17-20) At the UDC level, consequences are limited to taking certain privileges like visitation, phones and emails. (RT 26:19-20; 26-27:24-25, 1) At the higher DHO level of review, law and policy authorize GCT to be taken and disciplinary segregation to be imposed. (RT26:20-22; 28:9-11)

Since Mr. Flores was housed in the SHU in administrative detention (RT 28:8), his hearing was conducted in the SHU. (RT 14-15:23-25, 5-7)   The staff representative, Ms. Sluder and Mr. Flores were present. (RT 15:15-18) As part of the standard procedure there were guards posted outside the hearing room. (RT 16:12-15) Mr. Flores' hands were handcuffed behind his back, per SHU policy. (RT 16:18-19, 20-22) Ms. Sluder read him his rights. (RT 17:5-7) The hearing was conducted in an office in the SHU with a cell door, a desk, a computer, chairs and a window. (RT 24:1-4) The door was behind Mr. Flores and was not locked. (RT 24:13-15, 24-25)

Mr. Flores was asked if he wanted to make a statement. (RT 18:8-10) He stated, "I admit to the charges. It was over disrespect; she was rude to me." (RT 18:20-21)   Mr. Flores was advised of his right to appeal. (RT 19:12-13) The hearing lasted approximately 15 minutes. (RT 18:16-17)   Mr. Flores knew that he faced the potential loss of GCT and could be placed in disciplinary segregation.  He was advised of those consequences because he was given a copy of the inmate disciplinary process and policies during orientation when he initially entered the institution. (RT 29-10:24-25, 1-4)

**DISCUSSION**:

**Relevance** - The defendant argues that the DHO Report is not relevant because of the typographical error regarding the dates.  That error was remedied through the testimony.  No other argument was presented regarding relevance. Rule 402 provides for the admission of relevant evidence. FRCP.  Relevance is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence".  The DHO Report contains admissions made by the defendant that tend to make it more probable

that he assaulted the officer and refused to obey her orders. His statements are relevant to the present case.

**Miranda** – The defendant acknowledges that prison disciplinary proceedings are not criminal proceedings and do not entitle a defendant to the "full panoply of rights" guaranteed in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner, however, retains some Constitutional and the due process clause protections. *Id.* at 555; U.S.C.A.Const. Amends. 1, 14. The Supreme Court held that *Miranda* may apply to a custodial interrogation of an inmate, depending on the circumstances of the interrogation, but serving a term of imprisonment alone does not necessarily constitute *Miranda* custody. *Howes v. Fields*, 565 U.S. 499, 512, 514 (2012). The curtailment of an individual's freedom of movement is only the first step in analyzing custody for purposes of *Miranda*. *Id*. at 509.

In *Fields*, the Court found that Inmate Fields was not in custody for purposes of *Miranda* where the inmate was escorted by a corrections officer to a conference room in the prison. Two armed sheriff's deputies questioned him about serious allegations against him for conduct that occurred prior to his imprisonment. At times the deputies used a sharp tone and profanity. Fields did not consent to the interview in advance. He was questioned for between five and seven hours. Fields was told he was free to leave to return to his cell any time. Fields was not handcuffed. The conference room door was sometimes open and sometimes closed. Fields confessed to a crime. When he was ready to leave the interview, he had to wait 20 minutes for a corrections officer to escort him back to his cell. He was never given *Miranda* warnings or advised he could remain silent.

In the present case, Mr. Flores was incarcerated and housed in the SHU prior to the hearing. He was provided with the incident report and was advised of his rights twice, well in advance of the disciplinary hearing, and a third time as the hearing began. He was advised that he was not required to attend the hearing and that he could remain silent, although his silence could result in an adverse inference against him. Mr. Flores was told his silence could not be the sole evidence used to find him guilty of the alleged infraction.

He was escorted to the hearing by corrections officers and was handcuffed behind his back, per standard procedure for SHU inmates. The hearing took place in an office. The door was not locked, and Mr. Flores and his staff representative were seated closest to the door. The interview took about 15 minutes. Mr. Flores was free to leave at any time during the hearing, but he would have to be escorted by guards. Present in the hearing were Mr. Flores's chosen staff representative, the disciplinary hearing officer and Mr. Flores. The consequences that Mr. Flores faced if he made an admission at the hearing were loss of privileges, loss of GCT and the possible housing in disciplinary segregation.

Based on the totality of the circumstances, Mr. Flores was not in custody for purposes of *Miranda*. He attended his disciplinary hearing voluntarily. The physical surroundings and restrictions of movement were no different than the conditions under which he was housed on all other days while he was an inmate. There was no evidence that Mr. Flores was interrogated. The DHO simply asked if he wanted to make a statement. Without interrogation, *Miranda* does not apply. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)

**Voluntariness** – In order for a statement to be voluntary, it must be "the product of his free and rational choice. " *Mincey v. Arizona*, 437 U.S. 385, 401 (1978).

The defendant argues that his statements were not voluntary because he was warned that his silence could raise an adverse inference and he was not advised of his *Miranda* rights. The Supreme Court held long ago that "permitting an adverse inference to be drawn from an inmate's silence at his disciplinary proceedings is not, on its face, an invalid practice". *Baxter v.* Palmigiano, 425 U.S. 308, 320 (1976). As discussed above, *Miranda* warnings were not required under the circumstances of the statement in this case. There is no evidence that Mr. Flores's will was overborne or that his statement was involuntary. No evidence was presented that could be characterized as creating a coercive environment.

**RECOMMENDATION**:

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY the motion to suppress statements. (Doc.42)

Defense counsel may serve and file written objections within 14 days. If objections are not timely filed, the party's right to de novo review may be waived. No reply to objections shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

Dated this 13th day of May, 2019.

*Leslie A. Bowman*

Honorable Leslie A. Bowman
United States Magistrate Judge